May it please the court, I am Roman Storzer, representing Spirit of Aloha Temple and Frederick Honig in this appeal. The facts, I believe, with respect to the main preclusion issue, are not really in dispute here. The Spirit of Aloha Temple applied for a special use permit. Maui County staff spent many months working with the temple, recommended approval subject to conditions, and then it came before the Maui Planning Commission. The Maui Planning Commission denied the special use permit, and in doing so, made the decision that there was no less restrictive means of achieving the county's so-called interest in traffic safety other than denying the permit outright. And that is the decision that the district court here held as preclusive effect, in terms of collateral estoppel, over the challenge to most of the claims that the temple brought against Maui County and the Planning Commission based on its denial. Now, in essence, the Planning Commission decided for itself that it wasn't violating the law. If that were the law, the result would be that local governments would have discovered a way to insulate themselves from the provisions of RLUPA, the First Amendment, 14th Amendment provisions that may be brought against a local government that restricts religious exercise in this sense. And at the very least say that such review can only happen in the state court systems and not in the federal courts. Well, the district court did not recognize or give race judicata effect to any determination by the Planning Commission of the kind you just described. Instead, it applied issue preclusion, collateral estoppel for old people like me, to certain factual findings made by the Planning Commission. What's wrong with that? Well, the factual finding was that the only way to achieve the so-called county's interest in traffic safety was to prohibit the use. In essence, it was deciding an issue that is not the same issue. The issues were not identical before the Planning Commission as before... Well, maybe they didn't have to be, but it was your client's counsel that made a point of going to the Planning Commission and said, What's wrong with that? What's wrong with that, again, is that the elements of collateral estoppel are not met. Our clients told them that if they would deny this, that would violate these federal provisions. The example used by one of the advocates was telling a police officer that he's going to be violating your rights if certain things happen. The fact that we informed the Planning Commission that denying the special use permit would implicate RLUIPA and the Constitution does not mean that the issue of whether the Planning Commission's decision violated RLUIPA and the Constitution was before the Planning Commission itself. Did the Planning Commission have to consider in making its decision whether the decision it was about to make would be consistent with RLUIPA? When you raised the issue and told them to keep it in mind, didn't they then have to consider those standards in making the decision? Well, I don't believe that they had to, and I don't believe it was necessary for... They should just ignore RLUIPA. They do whatever they want, and then it's a second phase? The Planning Commission decides whether to grant a special use permit or not under state law. It had already made that decision, and your client went to it and said, you can't do that. That's what prompted them to do it again and to address the concern your client raised. I'm not sure how we're supposed to take the action of your client in saying to the Planning Commission, look, we got these rights as anything other than a request for the Commission to consider and address those rights. Well, the Planning Commission... Your client could have said, right, you've denied my permit, I'm going elsewhere, but that's not what your client did. Again, the issue of whether the Planning Commission's own decision violated RLUIPA, before it renders its decision, there was nothing... There was the issue of whether that decision was the least restrictive means of achieving a compelling governmental interest did not exist. RLUIPA talks about the implementation of land-use regulation that substantially burdens religious exercise. Before the land-use regulation is implemented, i.e., before the Planning Commission renders this decision, the issue does not exist. It's not something... And that's why the Planning Commission, in its initial denial of the second application, never talked about that. And if the Planning Commission activity had ended at that point, then I surely get your point. You'd be right. There'd be nothing from the Planning Commission that spoke to the relevant issue. But your client did not stop at that point or seek to appeal the Planning Commission's decision to circuit court. Instead, your client said to the Planning Commission, stop right there. You can't do this. We have these rights under the federal statute. And then proceeded, after the Planning Commission rescinded the first decision, with the subsequent hearing, which seems to me to suggest, okay, these issues are now on the table, and your client was participating in the process of addressing these issues newly put on the table. You're certainly right if the Planning Commission hadn't responded to your client's communication by reopening the hearing, then there'd be nothing that could qualify for collateral estoppel effect. But your client sent them back for a second bite. And now we have a factual finding in response to the issues raised by your client that the district court is saying, well, I'm now expected to apply this because it qualifies under Hawaii law for collateral estoppel. I mean, that seems to me certainly what the county and the state have argued. And you've been saying, well, it doesn't qualify for collateral estoppel because it wasn't the same issue. And it wasn't in the first denial, but I don't see how it wasn't the same issue in the second denial because your client teed up exactly those issues. Well, again, I don't believe that the ultimate decision that denies the special use permit is the identical issue. I would like to say that we have an argument in the alternative that this did not have the character of a judicial proceeding as well that would create preclusive effect. Now, the district court's decision was basically that it didn't matter whether there wasn't an actual adjudication because theoretically there could have been an adjudication. The fact that there wasn't didn't matter. We disagree. Was it a contested case hearing under Hawaii law? It was absolutely not a contested case hearing under Hawaii law. But wasn't the premise of your client's appeal to the circuit court that it was a contested case hearing? The appeal, I don't believe that that was explicitly stated. You would have had a right to appeal if it had not been a contested case on the Hawaiian circuit. Well, that was an issue that was raised again by the district court. But again, even if theoretically we did not have a right to appeal if it was not a contested case, that did not somehow convert a non-contested case hearing to a contested case. Well, actually, let me stop you there because under the doctrine of judicial estoppel, if you go to circuit court and say we've got a right to appeal because this is a contested case hearing, I don't think you can come back to us a long time later and say, oops, never mind, if your client took the position it was a contested case hearing, that seems to end it, doesn't it? I don't believe so, and I'm not sure that, I don't think that we actually converted it as a contested case hearing. I believe the appeal was made after the district court declined to exercise supplemental jurisdiction. But let me stop you there because even going to the district court, trying to get it to act as the appellate body for the planning commission, I understand you shouldn't be expected to be familiar with Hawaii law. I have the misfortune of being more familiar with Hawaii law. I've got to tell you, it seems to me, and it seems to me I've seen in the record, this was lined up precisely as a contested case hearing. That's how you get to circuit court to review the administrative agency decision. And so except for a moment, I may be wrong about that, and if I am, we'll take it back, but if that's the case, then what's left to be your argument that it wasn't a judicial proceeding? I'm not sure I understand your honor's question. You're giving me your alternative argument that it doesn't qualify as a judicial proceeding. And I'm saying my understanding of Hawaii law is that if it's a contested case hearing, your client may not have availed itself of all the opportunities that it could have in a contested case hearing, but the Hawaii appellate courts have treated contested case hearings by administrative bodies as being adjudicative, as being judicial for purposes of judicial estoppel. Again, I haven't practiced law here for nearly 20 years, but that's certainly the understanding I had before, and it's still generally my impression. I'll go back and look, but if that's the case, what is there to your second argument that this doesn't count as judicial? Again, that it did not have the characteristics of a judicial proceeding. It did not allow for cross-examination. It allowed unsworn statements made before the planning commission. There was no hearing officer. There was no representation by counsel at the hearings. There was no post-hearing briefings. The temple didn't even have the right to present its own application. It was controlled, the entire process was controlled by county staff. It was not a contested case hearing. I would like to, Your Honors, move on to my second point, if that's permissible, and that is even if the district court's decision with respect to preclusion was correct, which we certainly don't agree with, it cannot be used to preclude an adjudication of the temple's RLUIPA non-discrimination claim. That claim, brought under the provision in section B-2 of RLUIPA, says that governments may not treat religious organizations differently and worse on the basis of religion or religious denomination. It does not say unless the government is using the least restrictive means of achieving a compelling governmental interest. How were you treated differently here than any other party that was trying to do a similar activity? You had to get an exception. You had to get a special use permit. You didn't even qualify for the special use permit. You had to seek an exception, right? We had to apply for a special use permit, and we had to go through the process. But you were denied, and then you sought an exception to that. No. Is that right? No. After we were denied, there was a motion for reconsideration, and then it went on to the court action. Okay. What's your position for why you're treated differently than a non-religious entity that is trying to do the same activities? Well, we never got to that point. Summary judgment motions were made. The court had previously held that there were disputed issues of material fact on that question, and that was how the case was proceeding towards trial until the collateralist or the res judicata collateralist motions were made again. Well, the case went to trial, and there's a jury verdict. Why doesn't the jury verdict answer the question you're raising now? The jury verdict was only on a different provision of RLUIPA, only on one claim, the RLUIPA equal terms claim. The jury did not hear any of the other claims, including plaintiff's nondiscrimination claim. I'm not sure that the issue, since the court decided that there were genuine issues of material fact on the nondiscrimination claim, precluding summary judgment prior to its decision, its second decision on the preclusion motions, I believe that it would be proper if the court were to agree that there's no strict scrutiny tail to RLUIPA's nondiscrimination provision to vacate that decision and to remand it for further proceedings on the RLUIPA nondiscrimination provision. Why doesn't the answer given by the jury to the question that was posed to the jury serve to answer the question you're saying ought to be remanded? The jury, well, there's two separate answers to that. Number one, the question was with respect to the equal terms provision, which requires you to prove that you are a, quote, religious assembly or institution. That is not required for a nondiscrimination claim. A nondiscrimination claim applies to any treatment that is discriminatory on the basis of religion. It could be to an individual who is not a religious institution or assembly. What is the claim where there, I mean, first of all, the jury, it wasn't a binding jury, right? Wasn't this an advisory jury? It was an advisory jury. And I would like to point out that the burden of proof was on the county to prove that we were not a religious assembly or institution. And the county failed to persuade the jury of that. Just help me understand what your position is on why you were treated differently than a secular organization. We were treated differently because from day one, the county of Maui has discriminated against the temple based on its belief that the types of activities that were engaged in were not truly religious, that this was some kind of a sham, that Mr. Honig was not truly a minister. Right. Be that as it may, you still have to show that a secular entity would have gotten different treatment than your client. And where's the basis that a secular entity trying to do these same things would have gotten? I don't believe some of this is in the record here. I believe it's in the excerpts at 534 through 535 through 541. Some of the evidence of differential treatment of other churches. But again, the evidence supporting that mainly in the court below is not here because that's not an issue that's up on appeal. But it was. It was an issue in the jury verdict forum. And why doesn't the answer to questions three and four extinguish the claim? You've been talking about questions one and two, which has to do with whether or not plaintiffs qualify as a religion. But three and four ask were plaintiffs treated differently than non-religious organizations. And the jury said that your client had not proven that by a preponderance of evidence. And said that the county of Maui had proven by a preponderance of evidence the contrary. So what's left of the claim? Your Honor, that's a different claim. The equal terms provision prevents discrimination between religious organizations and non-religious organizations. The non-discrimination claim prevents discrimination between religious organizations. And that was not an issue in the trial. None of that was at issue in the trial. Hold on. Is the reason that the district court never addressed that because he gave preclusive effect to the state proceedings? And therefore, that's how he got out? Meaning, if we rule for you, if we rule against you on the claim preclusion issue, does that negate us addressing the discriminatory Arlupa claim? No, it doesn't. That's exactly my point, Your Honor. What the judge did was the judge read into the statute a strict scrutiny standard, saying that because the planning commission said this is the least restrictive means of achieving a compelling governmental interest, that would justify discrimination under Arlupa. The statute does not say that. And this court, in the Centro Familiar Cristiano Buenas Nuevas case, said that with respect to the equal terms provision, which also doesn't have such a strict scrutiny detail, that the court is not going to read that into the statute, nor should the court read that into this statute. Your Honor, my time is nearly up. We'll give you some extra time if you need it. You haven't addressed the prior restraint. Yes. I mean, are you still pursuing that argument? Absolutely, Your Honor. Now, if you are, let me ask one question, because I thought you presented some decent arguments in there. But one, and maybe this is a question more for the county, because I was surprised that the government didn't raise this, but in City of Lakewood v. Plain Dealer Publishing Company, the Supreme Court's held that there has to be a close enough nexus to expression to allow you to bring a facial prior restraint. How is there a close enough nexus to expression, based on the regulatory regime, to affect expression? I mean, this is affecting land use, not necessarily expression. If you want to use property as a church for religious expression in the county of Mounds, in the zoning district, you need to obtain a special use permit. There's no question about that. No, I understand that, but that goes into the same regulatory scheme as any secular use of it. If you want to build a massive commercial building, presumably on this land, you'd also have to go through the special use permit. And so, I mean, number one, I guess your answer raises really three questions. Number one, does the regulatory scheme cover non-expressive activity? Would you agree that the regulatory scheme does address non-expressive activity? Yes, Your Honor. Okay. And, I mean, where prior restraint challenges have been allowed to be brought is something like a billboard, because a billboard is almost always going to be expressive activity. But the Supreme Court, and more to the point, there's a whole line of Ninth Circuit cases that say that if there's not a close enough nexus to expressive activity, you can't bring a prior restraint facial claim. I think you have a good point that there's a lot of expression in the regulation. And I think the district court's analysis is probably wrong. But this issue was not addressed, and yet I think we need to address it. Maybe we need to ask a supplemental brief. Go ahead. Given that the district court did not address this and the county and state have not addressed this, I certainly would appreciate the opportunity to brief the issue. Okay. We'll give you some time for rebuttal. But I know you had other arguments, and we'll give you some time for rebuttal. Thank you, Your Honor. Okay. Let's move. Let's see. I guess we've got Mr. Bilberry, correct? You've got 12 minutes. Yes, Your Honor. Thank you so much. And thank you, Your Honors, for hearing this case today. I can actually please buy some of the initial text. Well, can you answer my question that I posed to the appellant's counsel? On the prior restraint, I did not see the government raise this argument about the need for a close enough nexus to expression. With all due respect, Your Honor, I think that question will be more appropriately addressed to Mr. Nakatsugi because the statute in question is a state statute, and what occurred was sometime after the case was ---- That's fine. If we need to address it that way, we'll do that. Okay. Thank you so much again. The court recognized the distinction between raised unicod and collateral estoppel, so I think I can go by that. Well, I actually have some questions about it, though, because it seems to me that part of the problem ---- I think it's correct that some of the factual determinations may be entitled to preclusive effect, such as the impact on traffic or how many cars would come or how many people would be there. Explain to me why we would give preclusive effect to a county's determination of whether its own decision meets a legal standard about the least restrictive means or satisfies strict scrutiny. Why would we give preclusive effect to that? Why would any court give preclusive effect? Well, I think as was noted, it was the plaintiff's lawyers who raised this issue with the planning commission, and I think the first question to ask is why they raised it, and it's because they wanted the planning commission to consider it. And in fact ---- Well, perhaps if they hadn't have raised it, they wouldn't have exhausted their remedy. They wouldn't have administrative exhaustion. I mean, I don't think there's a suggestion that they should have just tiptoed past our LUPA, not given the county a chance to respond and gone to federal court and not have raised our LUPA in the county proceedings. Is that what you're suggesting they should have done? I'm sorry, Your Honor, I don't understand the question. Well, you seem to be saying that it's preclusive effect because the plaintiffs asked the county commission to make the determination, and I agree as to factual questions. What I don't understand is why it's preclusive as to legal determinations. There shouldn't be any preclusive effect as to what the county ---- I mean, otherwise every county would just say, well, this satisfies the least restrictive or this is the least restrictive means of satisfying a strict governmental interest. And the fact that they say that would then give them, under your theory, would give that determination preclusive effect. That doesn't seem correct as a legal matter. On its face, it doesn't seem correct, and it's a fair question, Your Honor. But these are mixed questions of active law, and I do believe, and I'm looking now at my briefs to confirm this, that this might be an issue that has already been determined. And I'm looking now, and I apologize. Now, is the planning commission the decision maker? They don't review somebody else's decisions. It's like an initial decision, and then you appeal it to the planning commission. The planning commission is the decision maker. Is the decision maker on the permit application correct? Okay. So, if there is a RILUPA violation, the only entity that could commit the violation is the planning commission. There's no one else who's making the decision. Is that correct? Yeah, the plaintiffs would have alleged that the planning commission violated RILUPA as they come here. Okay. So, your position is that RILUPA permits the decision maker. RILUPA is trying to constrain. You sit in judgment of its own actions, and then when it finds that it did just fine, that's binding on a federal court. Well, I don't think the planning commission made that determination. What the planning commission determined is they had a conclusion. Well, I mean, I understand the difference between claim and issue preclusion. But when they add in the commission finds that the health and safety of the residents and public of Palmenana Road is an impelling government, there's no less restrictive need during public safety while granting the uses. They're obviously writing that in the light of the record so that it can be plugged into RILUPA and turn the key and shut the door. That's what you're asking, and that's what you got the district court to do here. So, under your view, the decision maker who is trying to be constrained decides its own conduct and then binds the federal court to accept. I'm confident that that's not what the planning commission intended, and I'm confident... But that is what, that's what the position you're taking in this court today is that we have to accept that the entity being restrained gets to decide its own conduct, and we can't question that issue, the core issue of strict scrutiny being satisfied. With all due respect, Your Honor, that's not what I'm arguing today. What I'm arguing today is that the planning commission was put in the position by the plaintiff's lawyer of having to make factual determinations. It determined that under the circumstances of this permit application and the testimony and the evidence it received, it saw documentary evidence, it saw video evidence, testimony, that the conditions that were an issue here, which had to do not just with traffic safety, Your Honor, but also had to do with sanitation, with clean drinking water, that these were interests that needed to be protected. That was, government needed to make sure that this was going to be a safe operation and a sanitary operation. That is a factual determination. That's fine, but that seems to be different than what the district court did. I agree with everything you just said, but then the district court bootstrapped that and said, well, because the planning commission found these factual determinations, including that this was the least restrictive means of reaching that governmental conclusion, therefore we're bound by them. And I just, I can't for the life of me figure out how that's correct. Well, let's back up just a minute, because, again, the plaintiff's appealed this as the court has recognized on the premise that it was a contested case, and they took these factual determinations. I'm not so caught up on whether it's a contested case or not. It may be. It may be for purposes of making a factual determination. I want to know why a legal determination by the planning commission that this satisfies our LUPA because it's the least restrictive means possible, why is that entitled as a legal determination to any preclusive effect whatsoever? I don't think the planning commission made any LUPA determination. They did not decide one way or the other whether they were going to do that. Then how in the world did preclusive effect apply to that determination? I mean, you seem to be undermining the district court's decision even more. I don't know, because the planning commission made factual findings and issued determinations that are measured by lateral estoppel. I agree. Okay, that's fine. Those factual determinations, that may be true. How much effect this would have on sanitation? How much effect this would have on traffic? But that does not answer the legal question of whether those are the least restrictive means to comply with the governmental interest. And that seems to be the error that the district court made, is saying, hey, this has already been resolved by the planning commission. I don't need to delve into it. I was going to address the least restrictive means, and I don't know if you noticed in the record, but Mr. Honig came back to the planning commission several times with amended applications, where he was playing around with numbers of people that he would have coming to these commercial events on the property. He would decrease the amount for one event and then increase it for another event. And then there were time restrictions. So the planning commission had a plethora of facts before it that went to what would be the way to allow this permit under a least restrictive means, and they just concluded in the end that they were unable to do that because nothing was presented to them by Mr. Honig, in spirit of Aloha Temple, as related to meeting the permit application conditions that were going to be satisfactory. I understand your argument. I understand. Let me interrupt you. I understand your argument. Formal issue of preclusion under Hawaii law. But what's your response to the fact that PRILUPA has a special vision that departs from the mission and requires that the claimant had a full and fair adjudication of that claim in the non-federal form? A decision in which the party that is to be restrained makes the final decision, is that a full and fair adjudication of a federal claim? That is a full and fair question. And again, I come back to point out that the plaintiffs had an avenue to appeal to the circuit court, which they did. Under very limited review. Yeah, but they had the opportunity. And they contested. They contested a plethora of facts in that appeal. They contested a plethora of facts. Nothing precluded the plaintiffs, when they appealed to state court, from questioning the planning commission's determination that it had a compelling governmental interest based on the facts before it when it considered the permit application, and that the only way to protect that interest was to deny the permit as the least restrictive means. They could have raised that in the circuit court. And interestingly, they did not. And I can't for the life of me figure out why they did not do that. No, they didn't, because they wanted to come to federal court. Yeah, fair enough. But they still could have contested those factual findings in state court. Did they make an England reservation when they went to circuit court? That did not preclude them from contesting the factual findings. Did they make an England reservation? That was the question. Yes or no? Oh, they did, Your Honor. I'm sorry. Yes, they did. But that reservation did not preclude them from contesting the specific factual findings and issue determinations made by the planning commission in state court. And then they could have appealed the state court ruling to the intermediate court of appeals, and they didn't do that either. My time is up, Your Honors. That was a very lively and engaged conversation. I appreciated it. And thank you again for your time. Thank you. We'll turn to Mr. Nakasugi. And can you address my question? Because I have to say, I mean, this is a big deal, right? I mean, we're talking about striking down a state statute or regulation. I don't know what – I'm not actually sure how it would be classified. But regardless, it's a facial challenge, and it does seem to give a lot of discretion. And that's problematic. But I don't understand why the state did not raise this Supreme Court line of cases about there needing to be a nexus between the regulation and expressive conduct. Yes, Your Honor. Thank you. You asked some very good questions. And we did consider making this line of argument. However, based on what had happened previously in the case, it looked like the district court was inclined to find that there was a nexus. And so strategically, we felt that it would be better to argue that we satisfy all the Ninth Circuit cases on prior restraint. It really seemed like the district court had already decided that there was a connection to religion and that a prior restraint claim was appropriate. And so we really focused on the case law in the Ninth Circuit on prior restraint because we believe that that case law supports us. If you look at the cases like Moreno Valley, GK Limited Travel, Seattle Affiliate, our rule, it's a lot closer to the cases that have been upheld than to the cases that the rule has been upheld. I disagree with that, I think, because, I mean, in this case, it gives you unfettered discretion to deny a vote. The other cases were discretion, you know, granted. Well, Your Honor, respectfully, I disagree with that. I think the rule functions the same way that the rule in Thomas does. So the commission has to cite one or more of the guidelines that's been violated. And if they can't do that, they can't deny it. Well, do they have to? I mean, the statute says you may give an exception. So what if you just, what if the planning commission had said, you know what, yeah, we know we're supposed to consider these five factors. We don't want to. We've got a busy docket. We're denying. It seems like that would comply. There's no basis to challenge that because it says, at the end of the day, they'd be in court saying, well, we may give it if we see these things. But even if we found all five things satisfied, we still have discretion not to do it. So why go through the process? We just don't want to give it. Your Honor, there is some discretion. Even Thomas recognizes that there's some discretion. But the rule in Thomas is very clear that you can't waive any of those requirements if it's inconsistent with the purpose of the statute. And I think, you know, in Thomas, the rule is applied very similar to ours. You have to look for one or more of the guidelines that's violated. And you can deny only on that basis. And so I think, Your Honor, that the discretion, it does exist, but it's controlled. It's limited. You know, the cases all say that you don't have to eliminate all official discretion. So your position, just so I'm clear, your position would be, if the Planning Commission had said, we find all five of these satisfied, but we still want to deny for a sixth reason that's not in the statute, would that be okay? It would not, Your Honor. You know, they have to cite one or more of the guidelines as a basis for denying the permit. And that's what Thomas says. If they can't cite at least one that's violated, they can't deny the permit. So what if they say it complies with four of the exceptions but not one? We think that that's enough here to deny. Would that be okay? I think they could deny it if there is a violation of one of those guidelines. That appears to be how the rule applies. The Hawaii Supreme Court has applied it in that way in the Neighborhood Board case. So where do you draw the line? What if they had 100 factors? And 99 factors were satisfied, but one factor was not. And they said, well, we're going to deny. Would that be okay? Your Honor, that's not our rule. Our rule has five. I understand that, but I want to know where is the line on the discretion that you believe is permissible? So you're saying if four factors were complied with but one was not, they could validly deny it, right? Yes. So what if there was a statute that said there were 100 factors and 99 were complied with and one wasn't? Would that be too much discretion? Well, Your Honor, if the rule is applied the same way that this one is applied and the same way that Thomas has applied, then you have to focus on one violation of the rule. And if there is one violation, then you deny it. You can't deny it. But again, Your Honor, this is the rule that was set forth in Thomas. So assuming, and I have no idea, but assuming we didn't agree with that argument and we wanted to get into the nexus issue, is your recommendation that we would remand it for the district court to consider the nexus in the first instance? Or should we request supplemental briefing in this court on the nexus task and decide that issue? Well, Your Honor, it's a legal issue. So I think this court, if this court wants supplemental briefing, then we can certainly do that. And furthermore, Your Honor, I do want to, I'm running out of time. Yeah, go ahead. I'd like to focus on some other aspects of this case, but mainly the procedural factors. You know, the Ipona case says you've got to look at the totality of the factors. And the totality includes the procedures. And our rule is supported by abundant procedures. Hawaii law is full of procedures. Under the Hawaii Administrative Procedures Act, under the rules of the Planning Commission, we basically check off all of the boxes that are in the Ninth Circuit cases. So I think the court's got to consider that. And ultimately, the question is whether a court can review, whether effective judicial review can be performed on decisions under this rule. And the answer is yes. Hawaii law requires findings of fact and conclusions of law explaining the decision. It requires submission of evidence supporting the decision. It supports appeal rights. So all of those procedural rules basically amount to effective judicial review. And really the point is if a judge can review these decisions, then content-based discrimination can't hide. And if you look at these rules, I think you'll see that Hawaii law really does protect against that kind of thing. The procedural protections are there, unlike the cases that were struck down in the other Ninth Circuit cases. I'd also like to point out, Your Honor, that this rule has been in effect for 46 years. It goes way back. It's been subjected to- As an unlawful prior restraint in any prior case. I don't believe it ever has, Your Honor. That's the thing. It's been around forever. There's several Hawaii Supreme Court cases, countless unpublished circuit court appeals, but it doesn't look like it's ever come up that judges have had trouble reviewing this rule or agencies have had trouble applying it. So this is a rule that's been around a long time. It's supported by Hawaii law. The people who implement the rule have really explained how this rule applies. It's consistent with Hawaii law. So I would argue that our rule should be upheld, even if you reach the merits. Even if you don't go into the nexus argument. You look at our rule. You look at the procedures. You look at how the rule has functioned. And I think the answer is that our rule does not give unbridled discretion to government officials. And really, all you need is some limits on the discretion. You don't have to eliminate all discretion. And we do have some limits, and the discretion is not unbridled. Think about it, Your Honor. Yeah. Assuming no more questions. Thank you for your argument. Thank you, Your Honor. And Mr. Schorzer, you have some time for rebuttal. I guess we took you over, so let's give you two minutes for rebuttal. Thank you, Your Honor. A few short points. Number one, I mean, it's clear that the state has waived this argument at this point. I think that there's a basis for such a holding. Waived which argument? The nexus? The nexus argument with expressive activity. I believe that the waiver was made clear during this argument itself. I do want to point out the issue about raising the RLUIPA issue before the planning commission. It really should not make a difference. And I would point the court to the Guru Nanak Sikh Society decision, the district court decision there, footnote two, which rejected exactly that argument and said, certainly that type of evidence cannot change the fact that the lawsuit before this court challenges the board's own actions and therefore could not possibly have been decided by the board in a manner warranting preclusion. And then the last point, Your Honor, we didn't get to the issue of severability. Although the entire structure of the regulation itself is flawed, the fact that there really is little question that at least some of the five elements or the five guidelines that the planning commission needs to look at do not provide objective criteria, means that the entire statute has to be struck down in this type of a facial challenge. This is not like the Get Outdoors Too case where you had two completely different sections of a code. And this court said in that case, well, because you never would have made it under this section, you don't get to challenge that section. This is one provision. It's not severable. You cannot look at the different provisions independently and say, okay, we're going to knock out this section, but we can apply the rest of the regulation. It can't work that way for the reasons we described in our brief. Thank you, Your Honors. Thank you. Thank you to all counsel for your preparation and your very helpful arguments and presentations today. It was well done. And that case is submitted and that concludes our arguments for today.
judges: Clifton, Nelson, Collins